IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL DOCKET NO.: 2:12CV79-RLV

| | |
|---|---|
| RONALD GEORGE ALLEN JR., ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Memorandum and Order |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** is before the court upon plaintiff Ronald George Allen Jr.'s ("Plaintiff") Motion for Summary Judgment (Doc. 10) and "Brief…in support…" (Doc. 11), both filed March 8, 2013, and Commissioner Carolyn W. Colvin's ("Commissioner") Motion for Summary Judgment (Doc. 12) and "Memorandum in Support…" (Doc. 13), both filed March 27, 2013. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

## I. ADMINISTRATIVE HISTORY

Plaintiff filed an application for a period of disability and Disability Insurance Benefits under Title II of the Social Security Act with the Social Security Administration on November 3, 2008. (Doc. 1, at ¶ II). Plaintiff also filed an application for Supplemental Security Income Benefits under Title XXVI of the Social Security Act with the Social Security Administration on November 18, 2008. (*Id.*) Plaintiff's claim was heard by an Administrative Law Judge ("ALJ") on June 15, 2010, who ruled that Plaintiff was not entitled to disability insurance benefits, or supplemental security income benefits under the Social Security Act. (Doc. 1-1). Plaintiff was subsequently denied review by the Appeals Council on August 9, 2012. (Doc. 1-2). Plaintiff

1

filed a timely complaint with this court on October 12, 2012. (Doc. 1). Plaintiff moved for Summary Judgment (Doc .10) and filed a brief in support of this motion on March 08, 2013. (Doc. 11). The Commissioner filed its own Motion for Summary Judgment (Doc. 12) and a memorandum in support of this motion (Doc. 13) on March 27, 2013.

## II. FACTUAL BACKGROUND

As this court finds the ALJ's findings of fact are supported by substantial evidence, it adopts and incorporates such findings herein as if fully set forth. These findings are referenced in the following substantive discussion.

## III. STANDARD OF REVIEW

Pursuant to the Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), this Court's review of a final decision of the Commissioner of Social Security is limited to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971), and (2) whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g) (2006); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Rhyne v. Astrue*, 3:09-CV-412-FDW-DSC, 2011 WL 1239800 at *2 (W.D.N.C. Mar. 30, 2011). Furthermore, "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456; *Rhyne*, 2011 WL 1239800 at *2.

Substantial evidence is "more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence that a reasonable mind would accept as adequate to support a conclusion." *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *Rhyne*, 2011 WL 1239800 at *2. Thus, if this Court finds that the Commissioner applied the correct

legal standards and that his decision is supported by substantial evidence, the Commissioner's determination may not be capriciously overturned. This standard is a lower threshold than the preponderance of evidence standard applied in a typical civil case. *Hays*, 907 F.2d at 1465. In other words, even if this Court were to find that a preponderance of evidence weighed against the ALJ's determination, it would be compelled to find for the Commissioner so long as the decision was supported by substantial evidence.

## IV. DISCUSSION

### A. Introduction

The court has closely reviewed the record in this matter. The issue is not whether the court might have reached a different conclusion had he been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The undersigned finds that it is.

### B. The ALJ's Findings

The ALJ evaluates a disability claim under Title II pursuant to the following five step analysis known as sequential review:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

> e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(b) (f). In the present case, the ALJ determined Plaintiff's claim at the third and fifth steps of the sequential evaluation process. (Doc. 1-1, at 4). The ALJ found that Plaintiff "[did] not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1." (*Id.*) Further, while the ALJ found that Plaintiff was incapable of performing the work he had done in the past, he found that Plaintiff "ha[d] the residual functional capacity [("RFC")] to perform light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b)" and that there was other work in substantial quantity available that Plaintiff could perform. (*Id*. at 6).

### C. Plaintiff's Objections to the ALJ's Findings

Plaintiff objects to the ALJ's findings on three grounds. Plaintiff contends that "[t]he ALJ ignored evidence that supports [Plaintiff] meets Listing § 1.04A [under the Social Security Administration's Listing of Impairments]," that "[t]he ALJ erred in his decision that [Plaintiff] could do other work," and that "[t]he ALJ's RFC is incoherent and inconsistent." (Doc. 11). The court will consider each of these arguments in turn.

#### 1. First Assignment of Error: the ALJ ignored evidence that supports Plaintiff meets Listing § 1.04A.

Plaintiff's first objects to the ALJ's finding is that the ALJ ignored evidence that supports a finding that Plaintiff meets Listing §1.04A of the Social Security Administration's Listing of Impairments. (Doc. 11, at 16). Listing § 1.04A contemplates disorders of the spine and reads, in pertinent part, as follows:

4

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With: A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Listing of Impairments § 1.04A. The ALJ concluded that while the record "contains diagnostic imaging of the cervical and lumbar spine…the objective evidence does not show motor loss or muscle weakness and the results on straight leg raise tests are inconsistent." (Doc. 1-1, at 4). He also noted that "in most records, claimant has normal gait and ability to ambulate effectively without an assistive device." (*Id.*)

Plaintiff contends that he presented the following pieces of evidence tending to show that he satisfied Listing 1.04A: a note from Dr. Miller's office dated September 15, 2009, discussing an MRI showing spinal stenosis and a disk compressing and displacing Plaintiff's spinal court as well as discussing tests relating to Plaintiff's back pain and range of motion; a "Disability Report – Adult" that Plaintiff had filled out stating "that he had back injuries, memory loss, loss of bowel functions, pain in knees, shoulders and neck and that he could only sit or stand for short times and he had loss of feeling in his arms"; a statement from Dr. Jennifer Zeisz stating that Plaintiff quit his job "because he couldn't feel his legs and his arms went to sleep"; a statement from Dr. Frank Wood stating that Plaintiff had "loss of feeling in his arms and pain [causing] him to not be able to stay focused"; a statement by Dr. Clara Applegate that Plaintiff had "trouble climbing the stairs and sometimes his legs [felt] numb" and that when the pain was more extreme that "he had difficulty controlling his bowels"; an October 2, 2009, examination by Keith Plott, FNP with Hayesville Family Practice where Plaintiff had a positive straight leg

5

raise; a statement by Mr. Plott on June 3, 2009 that Plaintiff had "difficulty raising his arms above his head secondary to pain and that it hurt[] for Plaintiff to try to grip his hand"; and, finally, a "Lumbar Spine MRI done February 7, 2008 [stating that] there is impingement of the right sided nerve root at L5-S1 due to disc protrusion." (Doc. 11, at 16-17). Plaintiff contends that "[t]he ALJ considered the evidence in these exhibits and chose only to include in his decision any statements or opinions that would support the ALJ's RFC." (*Id.* at 18). He further argues that "[n]one of the evidence which supports that Allen meets Listing § 1.04A…was acknowledged by the ALJ indicating an unfair examination of the evidence." (*Id.*)

Plaintiff's allegation that the ALJ did not acknowledge any of the evidence supporting that Plaintiff meets Listing § 1.04A is inconsistent with the content of the ALJ's Ruling. The ALJ considered at length evidence relevant to making a Listing § 1.04A ruling, including much of the evidence Plaintiff alleges he did not acknowledge. The ALJ looked closely at Plaintiff's medical timeline leading up to his alleged onset date, and observed that after Plaintiff's initial injury in 2002 he was able to receive treatment that allowed him to return to work. (*Id.* at 9). An examination of Plaintiff's spine by a Dr. Woodward in 2003 led to the conclusion that Plaintiff "could perform full-time modified work that involved frequent lifting, pushing, and pulling up to 50 pounds," and a February 2004 CT scan "showed minimal degenerative changes [in the spine] that were likely age related." (*Id.* at 9-10). The ALJ observed that there was "no evidence that the back impairment worsened around the alleged onset date," noting that Plaintiff "did not seek treatment for back pain leading up to the alleged onset date." (*Id.* at 10). The ALJ found this inconsistent with Plaintiff's claim that he "'simply could work no more.'" (*Id.* (citation to record omitted)).

The ALJ further observed that Plaintiff underwent an examination with Dr. Applegate in January 2008, the results of which were consistent with those findings from 2002 and 2003 noted above. (*Id.*) Specifically, Dr. Applegate noted that Plaintiff "was in no acute distress and [] had no drift of the upper extremities." (*Id.*) She further noted that his "fine finger movements were symmetric [,]…[his] coordination was normal [,]…his stance was stable[,] and he was able to perform tandem gait." (*Id.*) She did note that his motor strength "was mildly reduced by pain…in the lower extremities [and that he] was unable to walk on his heels and toes because of pain," and she therefore referred him for an MRI. (*Id.*) The results of this MRI, which took place in February 2008, showed some deterioration from 2002, but showed "no central or forminal stenosis, which is consistent with findings…from 2002." (*Id.* at 11). This MRI revealed "mild stenosis," but it "did not approach the nerve roots and there was definitively no impingement." (*Id.*) The ALJ concluded that the condition of Plaintiff's spine had "deteriorated only slightly during the time [Plaintiff returned to work after his injury] and as of the alleged onset date." (*Id.*)

The ALJ next considered evidence of Plaintiff's consultative examination with Dr. Wood from January 2009, performed approximately 11 months after the alleged onset date at the request of the Commissioner. (*Id.*) The ALJ concluded that results from this examination were "consistent with the objective evidence from the earlier examination in 2002, and somewhat improved from the examination [by Dr. Applegate] in January 2008." (*Id.* at 11-12). The ALJ noted that there was no evidence in the record suggesting that Plaintiff had been taking pain medication for his alleged back pain, nor anything to suggest that Plaintiff had received any treatment between this examination and his prior one with Dr. Applegate 12 months earlier. (*Id.* at 11). He specifically noted that, despite Plaintiff's complaints of pain, Dr. Wood concluded

7

that Plaintiff "was in no apparent distress." (*Id.*) Plaintiff "had normal gross and fine motor movements[,]… had a normal gait, [] could stand on his heels, and [] could squat, rise, and tandem walk." (*Id.* at 11-12). Further, Plaintiff "did not need his cane for ambulation," had normal muscle strength, had no normal reflexes and no atrophy, "could grasp, raise his arms above his head, and perform dexterous movements with his hands," and "had perfect range of motion in every area tested." (*Id.* at 12). Dr. Wood concluded that Plaintiff had "no functional limitations of any kind." (*Id.*)

The ALJ recognized that an August 2009 MRI and x-ray examination of Plaintiff's neck and lower back somewhat supported Plaintiff's allegations; indeed, he specifically referred to a reference by Dr. Miller that in the doctor's opinion, Plaintiff had "severe stenosis." (*Id.*) Yet the ALJ noted that one medical diagnosis is not sufficient to find a disability when it is inconsistent with the record as a whole. (*Id.*) He noted that despite some evidence to support Dr. Miller's diagnosis, the results of his examinations did not uniformly support a conclusion that Plaintiff was disabled. (*Id.*) For instance, "the examination of the back and upper and lower extremities was unremarkable, including normal shoulder exams bilaterally, normal grip strength bilaterally, negative straight leg raise bilaterally, and normal sensation throughout," all of which are "inconsistent with allegations of significant neuropathy of the legs, feet, arms, and hands." (*Id.*) He further noted that Plaintiff did not undergo any treatments as a result of Dr. Miller's diagnosis. (*Id.*)

Finally, the ALJ considered Plaintiff's medical records from Haynesville Family Practice (Haynesville), which began in June 2009, and treatment with the VA, which began in approximately April 2010. (*Id.*) The ALJ concluded that both of these records were inconsistent, and therefore not conclusive as to whether Plaintiff was disabled for the purposes of

8

his claim. (*Id.* at 12-13). For instance, while Plaintiff was receiving treatment for his spine, these treatments were conservative in nature, which suggested to the ALJ that the impairment was not overly severe. (*Id.* at 13). Furthermore, the ALJ noted that these records indicate that Plaintiff's complaints about his maladies varied from visit to visit, and at times he in fact stated that his symptoms were improving. (*Id.*). Because of these inconsistencies, the ALJ did not find these records conclusive. (*Id.* at 19).

The court finds, given the detail and depth with which the ALJ considered evidence pertaining to Plaintiff's alleged back impairment, substantial evidence clearly exists to support his conclusion. As noted above, "substantial evidence" "means such relevant evidence that a reasonable mind would accept as adequate to support a conclusion." *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The court finds this threshold more than met in the present case. Furthermore, "[t]he failure to discuss every single piece of evidence 'does not establish that [an ALJ] failed to consider it.'" *Mitchell v. Astrue*, No. 2:11-cv-56-MR, 2013 WL 678068 (W.D.N.C. Feb. 25, 2013) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998)). As the First Circuit has made clear, an ALJ can consider all of the evidence in a record without directly addressing every piece of evidence in his decision. *N.L.R.B. v. Beverly Enterprise-Massachusetts, Inc.*, 174 F.3d. 13, 26 (1st Cir. 1999); *see also N.L.R.B. v. Katz's Delicatessen of Houston St., Inc.*, 80 F.3d 755, 765 (2d Cir. 1996) ("An ALJ may resolve credibility disputes implicitly rather than explicitly where his "treatment of the evidence is supported by the record as a whole."). Given that the ALJ considered extensive medical evidence in reaching his conclusion, including much of the evidence Plaintiff contends he ignored, the court finds that substantial evidence exists to support

that ALJ's determination that Plaintiff's ailments did not meet the requirements of Listing § 1.04A.

### 2. Second Assignment of Error: that the ALJ erred in his decision that Plaintiff could do other work.

Plaintiff also contends that the ALJ erred in his decision that there was other work that Plaintiff could do. (Doc. 11). In the sequential evaluation process, once the claimant has established that he is unable to return to past relevant work, the burden shifts to the Commissioner to demonstrate that there are other jobs that exist in significant numbers in the national economy that the claimant can perform. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). An ALJ will first turn to Appendix 2 of the Social Security Administration's regulations, which indicates that the disability determination should be based on various combinations of age, education, and past vocational experience in conjunction with the claimant's RFC. *Id.* at 265. When the claimant suffers from nonexertional limitations on his ability to perform a full range of work, the ALJ must make his determination based on a full and individualized consideration of all the relevant vocational factors. *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983). In order for the Commissioner to prevail at this state of the sequential evaluation process, the ALJ must demonstrate through vocational testimony that, despite Plaintiff's limitations, there are other jobs in the national economy that he can in fact perform. *Id.*

In the present case, the ALJ determined that Plaintiff was limited to the exertional limitations of light work. (Doc. 1-1, at 6). As a result, he concluded that Plaintiff was unable to perform past relevant work. (*Id.* at 20). He reached this conclusion based on a vocational expert's testimony that Plaintiff's prior relevant work was classified under the Dictionary of Occupational Titles as medium semiskilled work. (*Id.*) The ALJ further found that Plaintiff had additional limitations that impeded or impaired his ability to perform the full range of light work.

10

(*Id.* at 21). The ALJ thus asked the vocational expert whether jobs existed in the economy for a hypothetical person of the plaintiff's age, education, work experience, and RFC. (*Id.*) The vocational expert testified that three jobs existed in substantial quantities in the national economy: bench assembler (of which there are 2,200 jobs in the North Carolina economy and 150,000 jobs in the national economy), electrical accessory assembler (1,200 jobs in the North Carolina economy and 75,000 jobs in the national economy), and nut and bolt assembler (900 jobs in the North Carolina economy and 48,000 jobs in the national economy). (*Id.* at 21).

Plaintiff contends two of these jobs—the bench assembler and the electrical accessory assembler—are not consistent with the limitations set out in the ALJ's hypothetical question to the vocational expert. (Doc. 11, at 14-15). Plaintiff argues that the Dictionary of Occupational Titles classifies both of these positions as having a reasoning level of two, which is inconsistent with the ALJ's restriction of plaintiff to simple tasks and only occasional decision making. (*Id.*) The court need not consider whether these positions are consistent with plaintiff's restrictions, however, because there is substantial evidence to support the ALJ's finding irrespective of this determination. The ALJ, on the basis of the vocational expert's testimony, found that the job of nut and bolt assembler was light work consistent with Plaintiff's limitations. (Doc. 1-1, at 21). Plaintiff nowhere objects to this determination. Furthermore, the vocational expert testified that there are 900 nut and bolt assembler positions in North Carolina and 48,000 in the national economy. (*Id.*). This number is more than sufficient to satisfy the Commissioner's burden to demonstrate that a significant number of jobs exist in the national economy that Plaintiff could perform. *See Hicks v. Califano*, 600 F.2d 1048, 1051 n. 2 (4th Cir. 1979) (noting that 110 jobs in the economy is not an "insubstantial" number); *see also Fisher v. Barnhart*, 181 Fed. Appx 359,

366 (4th Cir. 2006) (holding that 29,401 jobs in the national economy and 1,850 jobs in the local economy constituted a sufficient quantity to satisfy the Commissioner's burden).

Plaintiff further contends that the ALJ erred in his determination that there was other work that Plaintiff could do because the RFC's limitation to a sit/stand option is inconsistent with the restriction to unskilled work. (Doc . 11, at 15). Specifically, Plaintiff argues that Social Security Ruling ("SSR") 83-12 states that unskilled jobs are structured so that a person cannot ordinarily sit or stand at will. (*Id.*) While Plaintiff's assertion about SSR 83-12 is generally correct, it overlooks the fact that SSR 83-12 also states that "[i]n cases of unusual limitation of ability to sit or stand, a [vocational expert] should be consulted to clarify the implications for the occupational base." *Id.* at *4. This is precisely what the ALJ did in the present case. In his decision, the ALJ noted that "the vocational expert acknowledged that the Dictionary of Occupational Titles does not contemplate a sit/stand option" and that the "vocational expert explained that she relied upon [additional information, including] the Classification of Jobs, The Selective Characteristics of Jobs, and the Bureau of Labor Statistics" to reach her conclusion that jobs existed in the economy that Plaintiff could perform. (Doc 1-1, at 21). The vocational expert also based her conclusion on "thirty-five [35] years of experience through vocational rehabilitative service where she observed the jobs, conducted job analyses, and interviewed individuals who have performed the jobs." (*Id.*) The court therefore finds that the ALJ had substantial evidence to determine that there was other work available for plaintiff despite the fact that his restrictions included a stand/sit option.

Plaintiff next contends that the ALJ erred in finding that there was other work available for Plaintiff by failing to make a function-by-function assessment of Plaintiff's ability to do work related activities before classifying Plaintiff into one of the exertional categories. (Doc. 11, at

12

15). In support of this argument, Plaintiff cites SSR 96-8P, which states that "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work related abilities on a function-by-function basis….Only after that may RFC be expressed in terms of exertional levels of work." SSR 96-8P, 1996 WL 374184 (July 2, 1996). Plaintiff argues that in his Ruling, in the paragraph where the ALJ made his findings as to the Plaintiff's RFC, the ALJ first stated Plaintiff's exertional category before going into a function-by-function description of Plaintiff's ability to do work related activities. (Doc. 1-1, at 6). Yet Plaintiff misconstrues the meaning of this provision in SSR 96-8P. Rather than referring to the physical proximity of this discussion in the ALJ's ruling, the provision in question here speaks more generally to the ALJ's assessment process. An ALJ cannot first make a decision as to a claimant's exertional level and then consider the claimant's ability to do work-related activities. Instead, the ALJ's determination of a claimant's exertional level must be based upon an assessment of that claimant's ability to do work related activities. This is clearly what happened in this case. In his Ruling, the ALJ notes that in reaching his conclusion on Plaintiff's RFC, he "considered all [of Plaintiff's] symptoms." (*Id.* at 7). In the paragraph preceding this quotation, the ALJ explicitly discusses Plaintiff's limitations function-by-function. (*Id.* at 6-7). As such, the court finds that substantial evidence exists to support the ALJ's RFC.

The final argument Plaintiff makes in support of the contention that the ALJ erred in determining that there is other work that Plaintiff could do is that "SSR 96-8P requires that the RFC assessment consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." (Doc. 11, at 15). This language follows nearly verbatim the general description of an RFC found in SSR 96-8P. SSR 96-8P, 1996 WL 374184 (July 2, 1996) ("Ordinarily, RFC is an assessment of an individual's

ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for five days a week, or an equivalent work schedule."). Plaintiff misinterprets what this language requires. SSR 96-8P does not require an ALJ to explicitly state that a claimant will be able to do the work activities prescribed at a regular and continuing basis. Rather, by virtue of finding that a claimant can perform work at a certain exertional level, the ALJ is implicitly finding that the claimant can sustain such work on a "regular and continuing basis." *See Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006) (holding that an RFC implicitly contains a finding that claimant is able to work an eight hour day). As such, the court finds that the ALJ's RFC implicitly presumes that Plaintiff can perform the work in question.

In sum, the court finds that substantial evidence exists to support the ALJ's finding that there was other work available in the economy that Plaintiff could perform. The court therefore rejects this ground for objection to the ALJ's finding.

### 3. Third Assignment of Error: the ALJ's RFC is incoherent and inconsistent.

Plaintiff further objects to the ALJ's finding on the ground that the ALJ's Ruling is "[t]he ALJ's RFC is incoherent and inconsistent." (Doc. 11). Specifically, Plaintiff argues:

> The ALJ's RFC indicates that [Plaintiff] can sit for six hours and stand/walk up to four hours out of an 8 hour workday, but must have a sit/stand option. The ALJ's RFC further provides that [Plaintiff] can sit up to 60 minutes at one time, then stand/walk from one to ten minutes, and that any additional sitting and standing is consistent with the exertional limits and interspersed throughout the day, and that [Plaintiff] could not leave his workstation to exercise the sit/stand option. The limitation of [Plaintiff] to remain in his workspace and not leave would preclude [Plaintiff] from walking one to ten minutes after sitting for up to 60 minutes.

(*Id.* at 16). The Commissioner has persuasively responded to this argument. It noted that Plaintiff did not present any evidence in order to establish that he would need to leave his

14

workstation to utilize his sit/stand option. (Doc. 13, at 9-10). Furthermore, the vocational expert testified that a hypothetical person with Plaintiff's limitations could perform the job as a nut and bolt assembler. (Doc. 1-1, at 21). This testimony, as noted above, was based on numerous factors including the vocational expert's extensive experience. (*Id.*) As the Commissioner noted, Plaintiff had the opportunity during the hearing to question the vocational expert about this alleged inconsistency in the hypothetical restrictions and he did not do so. (Doc. 13, at 9-10). There is simply no evidence in the record leading to the conclusion that the ALJ's Ruling was fatally inconsistent. The court therefore finds that the ALJ's finding on this matter is supported by substantial evidence.[1]

## V. ORDER

The court has carefully reviewed the record in this case and hereby finds that the decision of the ALJ is supported by substantial evidence. Plaintiff's Motion for Summary Judgment will therefore be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

**IT IS, THEREFORE, ORDERED THAT:**

(1) The decision of the Commissioner, denying the relief sought by plaintiff, is **AFFIRMED**;

(2) The plaintiff's Motion for Summary Judgment (# 10) is **DENIED**;

(3) The Commissioner's Motion for Summary Judgment (# 12) is **GRANTED**; and

(4) This action is **DISMISSED**.

---

[1] Plaintiff also contends that the ALJ erred because his RFC is more consistent with sedentary work than with light work. (Doc 11, at 16). This argument, as the Commissioner notes (*see* Doc. 13, at 10), overlooks the fact that the ALJ determined that Plaintiff could lift up to 15 pounds occasionally (Doc. 1-1, at 6), while sedentary work involves lifting of no more than 10 pounds. 20 C.F.R. § § 404.1567.

Signed: November 13, 2013

*Richard L. Voorhees*
Richard L. Voorhees
United States District Judge